IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Amanda Carson f/k/a/ Amanda Leche,  )<br>  )<br>      Plaintiff,                        )<br>  )<br>vs.                                    )<br>  )<br>Emergency MD, LLC, David Brancati,  )<br>Johanna Calgie, and Jason Blasenak,  )<br>  )<br>      Defendants.                      )<br>  ) | Case No.: 6:20-CV-01946-JD<br><br><br><br><br>**MEMORANDUM OPINION AND<br>ORDER** |

This matter is before the Court on Plaintiff Amanda Carson f/k/a Amanda Leche's ("Plaintiff" or "Carson") Motion for Costs and Attorneys' Fees under Rule 54(d), Fed. R. Civ. P., and 18 U.S.C. § 2707(b)(3). (DE 154.) The Court previously granted Carson's motion for attorneys' fees under the Stored Communications Act ("SCA") and costs under Rule 54 but directed Carson to supplement her attorneys' fees motion to subtract fees for hours spent on unsuccessful claims unrelated to her successful SCA claim. (DE 176.) Carson submitted supplemental materials. (DE 179, 179-1, 179-2.) The parties thereafter filed a consent motion concerning appellate deadlines under Rule 58(e), Fed. R. Civ. P. (DE 197), which the Court granted. (DE 198.)

In DE 198, the Court noted that although it had granted Carson's motion for attorneys' fees under the SCA and costs under Rule 54, it had not yet ruled on the amount of attorneys' fees to be granted. The Court also directed Plaintiff's counsel to provide his firm's timekeeper hours and expense records to opposing counsel and the

1

Court and allowed Defendant Emergency MD, LLC ("EMD"), fourteen days to respond in light of the factors outlined in *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243–44 (4th Cir. 2009). Carson filed her response and supporting billing materials. (DE 199.) EMD filed its response in opposition. (DE 207.) Carson filed a reply. (DE 210.)

For the reasons below, Carson's motion for attorneys' fees and costs (DE 154) is granted as provided here.

## I.    BACKGROUND

This is an invasion of privacy case alleging federal statutory and state common-law claims arising out of Defendants' unauthorized access to Plaintiff's personal email account. The case was tried before a jury on November 14 to 16, 2023, on Carson's claims under the SCA and for Invasion of Privacy/Wrongful Intrusion against EMD, David Brancati, and Johanna Calgie. Carson dismissed her claims against Calgie at the close of her case. The Court also granted Defendants' motion for judgment as a matter of law on Carson's claims against Brancati individually and on Carson's punitive damages claims.

On November 16, 2023, the jury returned a verdict for Carson on her SCA claim against EMD, finding that Carson instituted this action within the applicable limitations period and that EMD violated the SCA. (DE 149.) The jury did not find that EMD's conduct caused Carson actual damages. (*Id*.) The jury also returned a defense verdict for EMD on Carson's Invasion of Privacy/Wrongful Intrusion claim. (*Id*.)

After the trial, both sides sought attorneys' fees and costs. Defendants moved for sanctions and attorneys' fees under the South Carolina Frivolous Civil Proceedings Sanctions Act and 28 U.S.C. § 1927. (DE 153.) Defendants Brancati and Calgie also moved for attorneys' fees and costs under Rule 54(d). (DE 155.) Carson moved for costs and attorneys' fees under Rule 54(d), attorneys' fees under 18 U.S.C. § 2707(b)(3), and sanctions under Rule 37(c)(2). (DE 154.)

In DE 176, the Court denied Defendants' motions for fees and sanctions and denied Carson's request for Rule 37 sanctions. However, the Court granted Carson's motion for attorneys' fees under the SCA and costs under Rule 54. In doing so, the Court found Carson was the prevailing party because she prevailed on the main issue: EMD's unauthorized access to her emails. (DE 176.) The Court also directed Carson to supplement her fee request to subtract time spent on unsuccessful claims unrelated to her successful SCA claim. (*Id.*)

Carson now seeks $173,465.00 in attorneys' fees and $5,323.17 in costs. (DE 210.) This amount reflects Carson's earlier fee request of $180,160.50, less a conceded $6,695.50 reduction for an erroneous October 26, 2023, time entry. EMD opposes the fee request and argues that no fee should be awarded or, that any fee should be substantially reduced. (DE 207.)

## II.    LEGAL STANDARD

The SCA provides that "any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity .

3

. . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2707(a). Appropriate relief includes "a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. § 2707(b)(3).

Rule 54(d)(1), Fed. R. Civ. P., states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Rule 54(d)(2) governs claims for attorneys' fees and related nontaxable expenses.

"[P]roper calculation of an attorney's fee involves a three-step process." *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 675–76 (4th Cir. 2015) (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). "First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 243). In deciding what constitutes a reasonable number of hours and a reasonable rate, the Fourth Circuit instructs district courts to consider the following twelve factors:

(1)    the time and labor expended;

(2)    the novelty and difficulty of the questions raised;

(3)    the skill required to properly perform the legal services rendered;

(4)    the attorney's opportunity costs in pressing the instant litigation;

(5)    the customary fee for like work;

(6)    the attorney's expectations at the outset of the litigation;

(7)    the time limitations imposed by the client or circumstances;

(8)    the amount in controversy and the results obtained;

4

(9)     the experience, reputation, and ability of the attorney;

(10)    the undesirability of the case within the legal community in which the suit arose;

(11)    the nature and length of the professional relationship between attorney and client; and

(12)    attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243–44.

"Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88. "Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id*. The Supreme Court has recognized that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). A court may reduce a fee award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id*. at 439–40. The Fourth Circuit has likewise explained that "the most critical factor is the degree of success obtained." *McAfee*, 738 F.3d at 92.

## III.    DISCUSSION

### A.    Entitlement to Fees

The Court has determined that Carson is entitled to attorneys' fees under the SCA and costs under Rule 54. (DE 176.) Accordingly, this Order addresses only the reasonable amount of fees and costs to be awarded.

EMD argues that this case should be treated as a nominal-damages case, warranting no fee award because the jury awarded no actual damages. The Court has

5

considered EMD's argument. The jury, however, did not merely return a technical or procedural ruling. It found that EMD violated the SCA. The SCA expressly authorizes "a reasonable attorney's fee and other litigation costs reasonably incurred," 18 U.S.C. § 2707(b)(3), and the Court has determined that Carson prevailed on the main issue here. (DE 176.) Moreover, as the Court explained in DE 196, the SCA authorizes fees "as appropriate relief apart from any requirement that damages, actual or otherwise, be recovered." *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 209 (4th Cir. 2009). Thus, the absence of actual damages does not defeat fee eligibility, though it remains relevant to the degree of success and the amount of a reasonable award. So the Court declines to deny fees altogether.

That said, EMD's argument concerning limited success is relevant to the amount of the award. Carson prevailed on her SCA claim against EMD, but she did not recover actual damages, did not prevail on her Invasion of Privacy/Wrongful Intrusion claim, did not obtain punitive damages, and did not obtain a verdict against the individual defendants. Those facts bear on the reasonableness of the fee award.

## B.     Lodestar Amount

Carson's current fee request is $173,465.00. Carson also seeks $5,323.17 in costs. (DE 210.) The fee request includes attorney time billed at $350.00 per hour and paralegal time billed at $125.00 per hour. (DE 179-2 at 5.)

### 1.     Reasonable Rate

The Court finds the requested hourly rates reasonable for this case. Reasonable rates are determined by looking at prevailing market rates in the community. *See Blum v. Stenson,* 465 U.S. 886, 894 (1984) ("The customary fee for

6

similar work in the community should be considered.") Although the fee applicant bears the burden of producing satisfactory specific evidence of prevailing market rates, *see Robinson*, 560 F.3d at 244–45, EMD does not meaningfully dispute the requested hourly rates and instead focuses its objections on the hours billed, billing descriptions, and Plaintiff's limited success. That said, Counsel's requested attorney rate of $350.00 per hour is within the range of rates approved in this District for experienced counsel in federal civil litigation. The requested paralegal rate of $125.00 per hour is also reasonable. EMD primarily challenges the number of hours and the extent of the requested fee in light of Carson's limited success, rather than the hourly rate itself. Accordingly, the Court will use the requested rates to calculate a reasonable fee.

### 2.    Time and Labor Expended

In determining the number of hours reasonably expended, courts consider whether the work was "useful and of a type ordinarily necessary to advance the . . . litigation to the stage it reached." *Doe v. Kidd*, 656 F. App'x 643, 660–61 (4th Cir. 2016) (citing *Webb v. Dyer Cnty. Bd. of Educ.*, 471 U.S. 234, 243 (1985)). A court should exclude hours that are excessive, redundant, inadequately documented, or otherwise unnecessary. *Hensley*, 461 U.S. at 433–34. The fee applicant bears the burden of submitting evidence sufficient to show that the requested hours were reasonably expended. *Id*. at 433. At the same time, a fee petition should not become "a second major litigation." *Id*. at 437.

7

EMD objects that many of Carson's billing entries are vague, excessive, duplicative, block-billed, or unrelated to the successful SCA claim. (DE 207 at 8.) EMD describes block billing as the practice of grouping multiple tasks into a single time entry rather than itemizing the time spent on each task, and argues that Plaintiff's entries make it difficult to determine what time was reasonably spent on the SCA claim, as opposed to unsuccessful claims, unsuccessful theories, or claims against other defendants. (*Id.* at 8–12.) EMD identifies, among other things, entries for trial preparation, appeal work, damages research, Google Takeout issues, spoliation-related work, unsuccessful motions, post-trial motions, conferences with third parties, and work concerning Defendants Brancati and Calgie. (*Id.*)

The Court agrees that some reduction is warranted. Block billing is not, by itself, a basis to deny fees. In *Abbott-Burdick*, this Court recognized that "the use of single entries of time expended for more than one task is not per se forbidden," and declined to reduce a fee award where contemporaneous records sufficiently allowed review. *See U.S., ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, 2002 WL 34236885, at *16 n. 11 (D.S.C. May 23, 2002). Similarly, the Fourth Circuit has cautioned against generalized billing that inadequately describes tasks, but affirmed a fee award where the entries did not contain the sort of vagueness and generalities that prevented meaningful review. *See Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 621 (4th Cir. 2018).

However, those authorities do not require the Court to accept block-billed or vague entries at face value. The point is whether the records, viewed in context,

permit the Court to make a reasonable assessment of the time spent and the work performed. Here, many of the challenged entries combine several tasks in a single entry, include broad descriptions such as "plan next steps," "review status of matter," "attention to documents," or "prepare for trial," or do not clearly identify whether the work was related to the successful SCA claim, unsuccessful claims, claims against individual defendants, damages theories, or other matters. (DE 199-1 at 2–21.) EMD specifically points to examples such as the October 26, 2023, entry for 22.73 hours; the April 16, 2024, entry for 9 hours; the November 3, 2023, entry for 11.5 hours; trial-day entries; appellate entries; and conferences with attorney Jeff Dunlaevy. (DE 207 at 8–13.)

The Court does not accept EMD's position that the challenged categories should be excluded wholesale. Some of the work EMD identified was reasonably related to litigating the SCA claim, defending against EMD's statute-of-limitations argument, preparing for trial, and preserving the successful verdict. Moreover, the successful and unsuccessful claims arose from a common factual core: the unauthorized access to Carson's personal email account. Thus, a precise line-by-line segregation of all time entries is neither practical nor required.

Still, the billing records contain sufficient vagueness, block billing, and claim/defendant overlap to warrant a reduction. This case involved multiple claims, multiple defendants, an appeal, trial preparation, post-trial motions, and fee litigation. Although the successful SCA claim was factually related to some of Carson's unsuccessful claims, not all work performed in the litigation can fairly be

9

attributed to the successful result. In making that determination, the Court need not achieve "auditing perfection" or conduct a line-by-line accounting of every time entry; rather, the Court may rely on its overall sense of the litigation and use reasonable estimates in calculating and allocating attorney time. *See Fox v. Vice*, 563 U.S. 826, 838 (2011). This approach is also consistent with *Abbott-Burdick*, where the Court considered the fee request in its totality and made targeted or percentage reductions where appropriate rather than allowing the fee dispute to become a second major litigation.

The Court also considers Carson's concession in DE 210. Carson acknowledges that the October 26, 2023, time entry of 22.73 hours was erroneous and agrees that it should be reduced to 3.6 hours, resulting in a $6,695.50 reduction. The current request of $173,465.00 reflects that reduction.

After considering the record, the billing materials, the parties' submissions, and the *Robinson* factors, the Court finds that the requested fee amount should be reduced to account for unsuccessful claims, unrelated or insufficiently related work, and billing entries that are vague, excessive, block-billed, duplicative, or difficult to allocate. Therefore, the Court reduces Carson's fee request by forty percent at this stage. This results in an adjusted amount of $104,079.00.

### C.     Unsuccessful Claims Unrelated to Successful Claims

The next step is to subtract fees for hours spent on unsuccessful claims unrelated to successful ones. *See Robinson*, 560 F.3d at 244. This inquiry requires the Court to distinguish between unsuccessful claims that are truly unrelated to the

10

successful claim and unsuccessful claims that share a common core of facts or related legal theories. As the Supreme Court explained in *Hensley*, where a plaintiff's claims involve "a common core of facts" or are based on "related legal theories," the case should not be viewed as a series of discrete claims; instead, the Court should focus on the significance of the overall relief obtained in relation to the hours reasonably expended. *Hensley*, 461 U.S. at 435.

The same principle is reflected in *Plyler v. Evatt*, 902 F.2d 273 (4th Cir. 1990), where the Fourth Circuit declined to treat a related post-decree proceeding as a separate lawsuit because the issues were inextricably intermingled with the rights originally vindicated. Where the issues implicate the same common core of facts or related legal theories, the Court should not draw overly fine distinctions.

Carson's successful SCA claim and her unsuccessful Invasion of Privacy/Wrongful Intrusion claim arose from the same general factual core: EMD's access to Carson's personal email account. Some of the evidence, trial preparation, and motion practice overlapped. Therefore, a complete subtraction of all work relating to unsuccessful claims would be impracticable and inappropriate.

That said, the Court must still account for unsuccessful claims and theories that were not necessary to the successful SCA result. Carson did not prevail on all claims or against all defendants. Carson's CFAA, Defamation, Civil Conspiracy, and SCHSA claims were dismissed before trial. At trial, Carson dismissed Calgie, and the Court granted judgment as a matter of law on Carson's claims against Brancati individually and on punitive damages. The jury also found for EMD on Carson's

11

Invasion of Privacy/Wrongful Intrusion claim and found no actual damages on the SCA claim.

This mixed result does not justify wholesale exclusion of all time connected to unsuccessful claims because much of the work was factually intertwined with the successful SCA claim. But it does support a reduction where the billing records include work directed to unsuccessful claims, unsuccessful defendants, punitive damages, and other theories not ultimately necessary to the SCA verdict. In *McAfee*, the Fourth Circuit recognized that unsuccessful claims sharing a common core of facts may warrant only a limited unsuccessful-claims reduction, while the plaintiff's limited overall success may be addressed separately at the degree-of-success stage.

The Court has, therefore, accounted for this *mixed* result in two ways. First, the Court's reduction above accounts for billing entries that include work on unsuccessful or insufficiently related claims, defendants, and theories, particularly where the entries do not allow the Court to allocate the time precisely. Second, the Court separately considers Carson's limited overall success in the degree-of-success analysis below. This approach avoids unsupported line-by-line subtraction while still recognizing that the fee award must be reasonable relative to the successful SCA result. *See Doe*, 656 F. App'x at 656–57 (rejecting a steep unsuccessful-claims reduction where the district court relied on vague categories and failed to provide adequate reasons).

12

### D.    Degree of Success

In the final step, the Court considers the relationship between the extent of Carson's success and the amount of the fee award. *See McAfee*, 738 F.3d at 92. Although the lodestar is presumptively reasonable, the Court must reduce the award where "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* (quoting *Hensley*, 461 U.S. at 439–40). The Supreme Court has recognized that the extent of the plaintiff's success is "the most critical factor" in determining a reasonable fee award, and the relevant question is whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for a fee award. *Id.*

Carson achieved a meaningful result. The jury found that EMD violated the SCA. That finding materially altered the legal relationship between Carson and EMD and vindicated Carson's statutory privacy rights. The SCA protects electronic communications from unauthorized access, and Congress expressly authorized reasonable attorneys' fees and costs for aggrieved persons who establish a knowing or intentional violation. 18 U.S.C. § 2707(a), (b)(3). It is not as if the only reasonable fee is no fee. *See Doe*, 656 F. App'x at 652–53 (recognizing that even where relief is limited, courts consider the extent of relief obtained, the significance of the legal issue, and whether the litigation served a public purpose).

At the same time, Carson's success was limited in comparison to the scope of the litigation as a whole. Carson recovered no actual damages. The jury found in EMD's favor on the Invasion of Privacy/Wrongful Intrusion claim. Carson did not

13

obtain punitive damages. Carson did not obtain a verdict against the individual defendants. Several claims were dismissed before trial. Thus, while Carson prevailed on the SCA claim, the relief obtained was limited when compared with the broader litigation.

The Fourth Circuit's decision in *McAfee* is instructive. There, the plaintiff prevailed on her § 1983 claim and recovered out-of-pocket damages, but she did not recover special compensatory or punitive damages. The Fourth Circuit held that the plaintiff's success had to be respected, but that a fee award far out of proportion to the actual success obtained would constitute a *windfall*. As the court emphasized, substantial disproportionality between a fee award and the verdict does not, standing alone, justify a fee reduction; rather, the reduction is justified by the plaintiff's limited litigation success.

So too here. The Court does not reduce the fee merely because Carson recovered no actual damages. The SCA permits fees and costs, and Carson obtained a jury finding that EMD violated the statute. But the Court must also account for what Carson did not obtain: actual damages, punitive damages, a verdict on the invasion-of-privacy claim, or liability against the individual defendants. Those limitations render the adjusted lodestar excessive relative to the success achieved.

Accordingly, after reducing the requested fee to $104,079.00 to account for billing issues and unsuccessful or insufficiently related work, the Court further reduces that amount to reflect Carson's limited monetary and overall litigation success. The Court finds that a total attorneys' fee award of $75,000.00 reasonably

14

reflects the work necessary to obtain the successful SCA verdict while accounting for the limited relief obtained and the mixed result in the case.

### E.     Costs

Carson seeks $5,323.17 in costs. (DE 154, DE 199, DE 210.) The Court previously determined that Carson is the prevailing party for purposes of Rule 54 and that she is entitled to costs. (DE 176.) EMD objects to aspects of Carson's costs request, but the Court finds the requested costs reasonable and recoverable in light of the record and Carson's status as the prevailing party. Accordingly, the Court awards Carson $5,323.17 in costs.

### IV.     CONCLUSION

For these reasons, Plaintiff Amanda Carson's Motion for Costs and Attorneys' Fees (DE 154) is granted as provided here. The Court awards Carson attorneys' fees of **$75,000.00** and costs in the amount of **$5,323.17**, for a total award of **$80,323.17** against Defendant Emergency MD, LLC.

This Order resolves the remaining amount of attorneys' fees and costs to be awarded under DE 154 and constitutes the final order for purposes of Fed. R. App. P. 4(a)(4), consistent with the Court's Text Order at DE 198.

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
May 18, 2026

15